**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| RACHEL THOMAS,<br>   Appellant, | DOCKET NUMBER<br>DC-1221-23-0191-W-1 |
|   v. | |
| DEPARTMENT OF VETERANS<br> AFFAIRS,<br>   Agency. | DATE:  February 27, 2025 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Rachel Thomas, Greenville, North Carolina, pro se.

Monique Smart, Esquire, Winston-Salem, North Carolina, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member

*Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only in the following

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the appellant engaged in additional protected activity but the agency still rebutted her prima facie case of reprisal, we AFFIRM the initial decision.

As further detailed in the initial decision, the appellant joined the agency as a Staff Physician in January 2020. Initial Appeal File (IAF), Tab 15 at 57, Tab 30, Initial Decision (ID) at 2. She described quickly finding the work environment problematic for a variety of reasons, many of which involved her supervisor and one coworker nurse. *E.g.*, IAF, Tab 1 at 21-26; ID at 2. Based on the appellant's reporting of the same, the agency engaged in fact-finding that led to the convening of an Administrative Investigation Board (AIB), during which the appellant gave testimony. *E.g.*, IAF, Tab 9 at 27-35, 38-168; ID at 2-3.

The AIB issued a January 2022 report, which concluded that the appellant and the nurse she had complained about had both engaged in misconduct, but the appellant's supervisor had not. *E.g.*, IAF, Tab 12 at 45-48, Tab 22 at 23; ID at 3-4. The report included a number of recommendations, one being that "[a]ppropriate disciplinary action, up to a [r]eprimand should be taken against" the appellant for what it characterized as both "disrespectful, insulting, or obscene language or conduct" and "conduct that is unbecoming of a Federal

employee." IAF, Tab 12 at 48. Soon after, the appellant alleges that she emailed some safety concerns for patients to supervisors and filed a complaint with the Office of Inspector General (OIG). *E.g.*, IAF, Tab 1 at 25; ID at 4. Then, in April 2022, the Associate Director notified the appellant that the AIB investigation was complete and he was recommending administrative action against her. IAF, Tab 22 at 12-14; ID at 4. Just after, the appellant filed a May 2022 complaint with the Office of Special Counsel (OSC), alleging whistleblower reprisal. IAF, Tab 27 at 11-28.

In August 2022, the Primary Care Service Line Chief proposed to reprimand the appellant based on three charges stemming from revelations from the AIB investigation. IAF, Tab 9 at 5, 11-12. Charge 1 alleged that the appellant misused government equipment in that she engaged in inappropriate conversations with the nurse she had complained of using government equipment and information technology while on duty. *Id*. at 11. Charge 2 alleged that she exhibited conduct unbecoming a Federal employee when exchanging messages about another coworker with that nurse and by using the word n**** during her AIB testimony. *Id.* Charge 3 alleged that the appellant lacked candor during her investigatory interview when discussing messages between the appellant and the nurse about whom she had complained. *Id.* The appellant responded to the proposal, *id.* at 14-17, but the deciding official sustained all the allegations and the reprimand, *id.* at 18-19. Following a grievance the appellant filed about the same, the agency issued an amended reprimand in October 2022, which sustained only the allegation about the appellant using the word n**** during her AIB testimony. IAF, Tab 9 at 24-26, Tab 12 at 31-32.

In December 2022, OSC closed its investigation of the alleged whistleblowing retaliation, IAF, Tab 2, and this IRA appeal followed, IAF, Tab 1. The administrative judge developed the record and issued a decision on the written record because the appellant did not request a hearing. *E.g.*, ID at 1; IAF, Tab 1 at 2. He first made detailed findings about how some, but not all, of the

allegations the appellant presented in this IRA appeal fell within the Board's jurisdiction. ID at 9-11. For example, he explained that the appellant did not present the requisite nonfrivolous allegations for some claims, and he concluded that she could not pursue the decision to issue the reprimand because the appellant elected to challenge that through negotiated grievance procedures. ID at 10.

Turning to the merits, the administrative judge found that the appellant's May 2022 complaint to OSC was protected activity under 5 U.S.C. § 2302(b)(9)(C). ID at 17. He also found that the appellant met her burden of proving that she made protected disclosures under 5 U.S.C. § 2302(b)(8) concerning (1) her coworker nurse violating the appellant's privacy by accessing the appellant's medical records, ID at 19-20, (2) that same coworker nurse misusing work time, engaging in attendance violations, and attempting to misuse someone else's prescription medication, ID at 21-23, and (3) other staff engaging in wrongdoing that included mishandling a specimen, mishandling faxes to treaters, not communicating test results and plans with patients, and other patient safety concerns, ID at 24-28.

The administrative judge then found that the appellant proved that she was subject to two covered personnel actions, the threat of administrative action by the Associate Director, which he based on the recommendation for disciplinary action in the AIB report, and the proposed reprimand by the Chief of Primary Care Services, but no others that were within the Board's jurisdiction. ID at 28-33. The administrative judge further found that the appellant proved that her protected disclosures and activities were a contributing factor to those personnel actions. ID at 34-36.

Having determined that the appellant presented this prima facie case of reprisal, the administrative judge shifted the burden to the agency. Broadly speaking, he found evidence in support of the actions to be strong, ID at 37-40, and the motive to retaliate to be small, ID at 40-42. The administrative judge also

found that there was no substantive or persuasive evidence of comparator nonwhistleblowers. ID at 42. Weighing these factors together, he concluded the agency met its burden of proving, by clear and convincing evidence, that it would have taken the same personnel actions in the absence of the appellant's protected whistleblowing disclosures and activity. ID at 36-43.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency did not file a timely response.[2]

<u>The appellant established a prima facie case of reprisal for some of her claims.</u>

Under 5 U.S.C. § 1214(a)(3), to establish Board jurisdiction over an IRA appeal, an appellant must prove by preponderant evidence that she exhausted administrative remedies with OSC before seeking corrective action from the Board. *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 5. In addition, an appellant must make nonfrivolous allegations that: (1) she made a protected whistleblowing disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *Id.*, ¶ 8. On review, the appellant does not challenge any of the administrative judge's jurisdictional determinations, and we discern no reason to consider them further.[3] *See* ID at 9-11.

---

[2] After the deadline for filing a timely response to the appellant's petition for review, the agency filed a request for extension. PFR File, Tabs 2, 3. The Clerk of the Board denied that request. PFR File, Tab 4.

[3] In her petition, the appellant does allege various wrongdoings on the part of the agency that were not addressed by the administrative judge. However, many of these alleged wrongdoings occurred after the initial decision in this appeal and none appear to be relevant to the claims at issues before us in this IRA appeal. PFR File, Tab 1 at 16-22. To illustrate, the appellant describes insensitive or otherwise inappropriate responses to her neighbor's housefire and her own automobile collision with a deer, both of which occurred around the time of the initial decision in this appeal. *Id.* at 18-19. She also discusses problems with her workload after the initial decision in this appeal. *Id.* at 19-20. Additionally, the appellant alleges that the agency set her up for failure from the start of her employment. *Id.* at 16. With these allegations, the

After establishing jurisdiction in an IRA appeal such as this, an appellant must prove her claim by preponderant evidence. *Young v. Department of Homeland Security*, 2024 MSPB 18, ¶ 10; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). As noted above, the administrative judge found that the appellant met this burden for some, but not all, of her claims that were within the Board's jurisdiction. ID at 17-36. On review, the appellant argues that she met her burden in two additional ways. First, she suggests that the entirety of her AIB testimony was protected activity, despite the administrative judge finding that just some of the disclosures in her testimony were protected. PFR File, Tab 1 at 9; ID at 7 n.6. On that point, the appellant further argues that if her AIB testimony was protected, she could not be disciplined for that protected activity, which included her use of the word n****. PFR File, Tab 1 at 9-10. Next, she argues that she was subjected to another covered personnel action in the form of a hostile work environment and the administrative judge erred in finding otherwise. *Id.* at 12-15. We agree as to the first of these arguments but not the others.

Section 2302(b)(9)(C) provides protections for "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law." 5 U.S.C. § 2302(b)(9)(C). The administrative judge concluded that the appellant's AIB testimony was not covered by this provision because the AIB was an ad hoc entity rather than a

---

appellant submitted evidence that was not part of the record below, such as images of the housefire, images of her automobile damage, and email communications about the same. *Id*. at 23-47. We will not address these arguments and evidence further because they are not within the Board's jurisdiction or material to those matters that are within the Board's jurisdiction. *See Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985) (recognizing that the Board's jurisdiction is not plenary; it is limited to those matters over which it has been given jurisdiction by law, rule, or regulation); *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (stating that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).

separate agency component. ID at 7 n.6. We find otherwise. In *Reese v. Department of the Navy*, 2025 MSPB 1, ¶ 51, the Board held that the broad language of the statute protects not just permanent agency components but also ad hoc investigative internal investigations or reviews conducted pursuant to an established agency procedure. The Board found that agency components as described in section 2302(b)(9)(C) should have similar attributes and functions to those of the Offices of Inspector General, although such attributes may vary from agency to agency. *Id.*, ¶ 50. In general, such components will have a degree of independence and objectivity, as well as the authority to investigate or review by taking testimony, collecting evidence, and making findings and recommendations. *Id.*

The appellant's cooperation with and testimony to the AIB was thus protected under section 2302(b)(9)(C). However, contrary to the appellant's related argument about the same, this does not absolve her of all associated misconduct. The character and nature of an employee's whistleblowing can still be a legitimate basis for discipline. *Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673, ¶ 12 (2011) (stating that the whistleblower protection statutory scheme is not a general license for bad behavior); *see Kalil v. Department of Agriculture*, 479 F.3d 821, 825 (Fed. Cir. 2007) (rejecting the appellant's argument that once a disclosure qualifies as protected, the character or nature of that disclosure can never support a disciplinary action); *Greenspan v. Department of Veterans Affairs*, 464 F.3d 1297, 1305 (Fed. Cir. 2006) (stating that wrongful or disruptive conduct is not shielded by the presence of a protected disclosure); *Watson v. Department of Justice*, 64 F.3d 1524, 1528-30 (Fed. Cir. 1995) (rejecting the appellant's argument that an adverse action must be based on facts completely separate and distinct from protected whistleblowing disclosures).

Turning to the appellant's other argument, that she was subjected to a hostile work environment that rose to the level of a covered personnel action under the whistleblower protection statutes, we are not persuaded. The

administrative judge used the proper analytical framework and provided well-reasoned findings about the issue. ID at 30-33. He concluded that although the appellant's working conditions may have been less than ideal, she did not prove practical and significant effects that amounted to a significant change in duties, responsibilities, or working conditions, or any other covered personnel action. ID at 32-33 (citing, *e.g., Skarada v. Department of Veterans Affairs*, 2022 MSPB 17). The appellant disagrees, but she has not presented any basis for us to disturb the initial decision as to this issue. PFR File, Tab 1 at 12-15. In her petition, she recounts various alleged unprofessional conduct or other shortcomings by several coworkers, such as distasteful language, yelling, and unwarranted accusations of wrongdoing. *Id.* However, the appellant has not pointed us to evidence showing that this amounted to a personnel action under the statute.

In sum, the administrative judge found that the appellant made disclosures protected by section 2302(b)(8) regarding various actions by the coworker nurse and patient care issues and she engaged in some activity protected by section 2302(b)(9)(C) by filing an OSC complaint. ID at 17, 19-28. We modify the initial decision to find that she engaged in additional activity protected by section 2302(b)(9)(C) by cooperating with and testifying to the AIB. The administrative judge also found that the appellant's protected disclosures and activity was a contributing factor to two covered personnel actions—the threat of administrative action and the proposed reprimand. ID at 28-36. We modify the initial decision to reach the same conclusion about the appellant's cooperation with and testimony to the AIB. This protected activity was undoubtedly a contributing factor to the threat of administrative action and the proposed reprimand since the AIB formed the basis for each. *Compare, e.g.*, IAF, Tab 12 at 45-48 (AIB conclusions), *with* IAF, Tab 9 at 11 (proposed reprimand), Tab 17 at 25-26 (threat of administrative action).

The agency rebutted the appellant's prima facie case of reprisal.

Even if an appellant establishes that she made a protected disclosure or engaged in a protected activity that was a contributing factor to the agency's personnel action, the Board will not order corrective action if the agency can show by clear and convincing evidence that it would have taken the action absent the disclosure or activity. *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 23. Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Id.*

In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the strength of the agency's evidence in support of the action, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Id.* The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Id.* Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Id.* The Board considers all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Id.*

Once again, the administrative judge applied this framework and found that the agency met its heightened burden. We agree as modified below.

The administrative judge correctly found that the evidence strongly supported the threat of administrative action and the proposed reprimand. ID at 38-40. When it took those covered personnel actions, the agency had significant documentary and testimonial evidence before it. For example, the agency had screenshots of various distasteful messages between the appellant and the coworker nurse about whom she had complained, much of which the appellant

acknowledged during her AIB testimony. *E.g.*, IAF, Tab 12 at 50-53, 78-79. The agency also had the AIB transcript, in which the appellant stated, "He sent me a video – a YouTube video of a big ass n**** -- excuse my language -- on a scooter drinking a CapriSun." *Id.* at 80.

On review, the appellant explains her use of the word n**** during the AIB and argues that it was not deserving of a reprimand or any other discipline. PFR File, Tab 1 at 4-8. As she has before, the appellant asserts that she was merely recounting the title of the video sent to her as an example of the kinds of offensive things this coworker nurse did. She compares her own frank description as akin to the agency repeating the same in writing as it discussed and then issued her reprimand. While we recognize the context in which the appellant used this language, we do not find that it requires a different result. The agency surely recognized the context as well. Otherwise, one might reasonably expect a consequence more severe than a written reprimand. As recognized by the administrative judge, the appellant could have qualified her word choice at the time, but she did not at her own peril. ID at 39-40.

Next, the appellant disputes the other charges underlying her reprimand, i.e., the ones not sustained after her grievance. PFR File, Tab 1 at 10-12. For the misuse of government equipment charge, the appellant states that the agency's evidence of the same was "supposedly sent from my personal cellphone off duty hours although the [agency] charged me erroneously . . . that I misused government equipment" to send the messages. *Compare* IAF, Tab 9 at 11, *with* PFR File, Tab 1 at 10. She further asserts that the agency did not present the Board with any examples of inappropriate messages sent from her government device "because there are none." PFR File, Tab 1 at 10. Turning to the lack of candor charge, the appellant explains that she accurately responded to the agency's questions by initially stating that she did not recall sending inappropriate messages, she then genuinely apologized when confronted with screenshots suggesting otherwise, and she cooperated throughout. *Compare* IAF,

Tab 9 at 10, *with* PFR File, Tab 1 at 10-11. The appellant further suggests that some of the offending messages may have been altered to make it seem as if she sent them when she did not. PFR File, Tab 1 at 11.

We have considered these arguments by the appellant, but we are not persuaded. In determining the strength of the agency's evidence, the Board considers the weight of the evidence before the agency when it acted. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 13 n.5; *Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, ¶ 8 (1999), *aff'd*, 242 F.3d 1367, 1372 (Fed. Cir. 2001). At the time of the personnel actions at issue, i.e., the threat of action in the AIB report and the proposed reprimand that followed, the agency had the appellant's own changing testimony about inappropriate messages sent between her and the nurse on both private platforms and government systems, i.e., Facebook and Teams. *E.g.*, IAF, Tab 12 at 59-76. For example, after being confronted with screenshots about some inappropriate messages between her and the nurse on Facebook, the appellant acknowledged that she and the nurse sent competing Teams messages that disparaged the physical appearance and heritage of a coworker. *Id.* at 72-73. The agency's ultimate decision to sustain only the allegation involving the appellant's use of the word n**** does not meaningfully detract from the fact that the agency's evidence strongly supported the threat of administrative action and the proposal to reprimand her.

Turning to the motive to retaliate, our analysis must account for any individual motive to retaliate by the agency officials involved in the challenged personnel action but also any professional or institutional motive to retaliate. *Young v. Department of Homeland Security*, 2024 MSPB 18, ¶ 30; *see Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019-20 (Fed. Cir. 2019). "Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them

in their capacities as managers and employees." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012).

As discussed above, the appellant's entire testimony to the AIB was protected rather than just certain disclosures within the testimony that the administrative judge considered. The scope of the AIB investigation included matters beyond the appellant's protected disclosures to include, most notably, complaints that the appellant's supervisor caused a hostile work environment and sexual harassment, or she otherwise allowed both to permeate the workplace. ID at 3 n.3; IAF, Tab 12 at 45. The AIB concluded that there was no evidence of the supervisor engaging in the alleged wrongdoing. IAF, Tab 22 at 23. Nevertheless, we modify the initial decision to account for this additional protected activity.

The administrative judge found that relevant officials had some motive to retaliate because her protected disclosures during the AIB implicated agency supervision and management writ large. ID at 40-42. We find that motive heightened by the remainder of the appellant's AIB testimony and cooperation, generally. This remains the case, even though the appellant's supervisor was not the agency official responsible for the threat of administrative action or the proposal to reprimand the appellant. *See* IAF, Tab 1 at 9-10 (proposed reprimand by Chief), 21-23 (appellant's identification of her supervisor as the Section Chief along with allegations of her supervisor's wrongdoing, and the appellant's identification of the individual who proposed her reprimand as the Service Line Chief), Tab 22 at 14 (threat of administrative action by Associate Director). Although relevant officials to the contested personnel actions had no apparent personal motive to retaliate for the appellant's protected disclosures and activities, they did have a noteworthy institutional motive to retaliate. Thus, this factor favors the appellant.

Regarding similarly situated nonwhistleblowers, the agency alleged that some were treated the same as the appellant. But the administrative judge found

that the agency did not present persuasive evidence about such individuals. ID at 42. Thus, he found that this factor was of little relevance or at best cut slightly against the agency. *Id.* We discern no reason to conclude differently.[4] Only evidence reflecting the agency's treatment of similarly situated nonwhistleblower employees is relevant to *Carr* factor 3. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 67. The risk associated with not producing such evidence falls on the Government. *Id.*

Weighing the *Carr* factors together, the administrative judge concluded that the agency proved by clear and convincing evidence that it would have taken the same personnel actions, i.e., the threat of administrative action and the proposed reprimand, in the absence of the appellant's protected disclosures and activities. ID at 43. We have reweighed the *Carr* factors to account for the additional activity that we found protected, i.e., the entirety of the appellant's cooperation with the AIB. Yet we reach the same conclusion. Relevant officials had a notable motive to retaliate, and the agency did not present persuasive evidence showing that it treated similarly situated non-whistleblowers in a similar way. However, the evidence in support of the contested personnel actions was very strong, and we are left with a firm belief that the agency would have taken the same personnel actions in the absence of the appellant's protected disclosures and activities.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain

---

[4] The agency took personnel actions against the appellant's coworker nurse after the conclusion of the AIB, but the record suggests that he is not a valid comparator because he also attained whistleblower status by cooperating with the AIB. *See, e.g.*, IAF, Tab 22 at 10, 21, 24-25, 67-69.

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of

competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.